UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                       v.                    **Hon. Hugh B. Scott**

                                           10CR184S

ANTONIO BRIGGS, et al.,                   **Order**

          Defendants.

      Before this Court are defendants' omnibus discovery motions (Docket No. 225 (Ard and other defendants' joint motion[1]); Docket Nos. 217 (Cruz), 220 (Beasley), 223 (Dolly), 224 (Hawkins), 227 (Bobby Spencer), 230 (joinder motion of defendant Ainsworth), 232 (joinder motion of Beasley), and 233 (joinder motion of defendant Barton)), following defendants' motion to bifurcate pretrial motions and to extend time to file further motions (Docket No. 122), which was granted on May 13, 2011 (Docket No. 215). That Order set a further schedule for filing discovery motions, including motions regarding the manner of the Government's disclosure of electronically stored information and surveillance information raised in the motion to bifurcate. Defendants filed their moving papers (Docket No. 226) and replies (Docket Nos. 259, 260-61, 263 (motions joining in Ard movants' reply)), and the Government responded (Docket Nos. 253, 269). The Government also moved for reciprocal discovery (Docket No. 253, Gov't Response at 51). The motions were argued on August 12, 2011, and deemed submitted as

---

[1] Joining Ard are Briggs, Torano Spencer, Cruz, McTigue, Dolly, Sidebottom, Johnson, and Walker, Docket No. 225.

of that date. In addition to the moving papers described above, the Court relies upon the earlier moving papers for the motion to bifurcate[2].

This Order considers one aspect of the defense motions, regarding the manner of production by the Government of the electronically stored information (or "ESI"). Despite the due process and liberty interests inherent in criminal actions, the Federal Rules of Criminal Procedure omit a key area in dealing with discovery that has been a common place aspect of civil practice since 2006. This Court has been asked to address the manner in which the Government (and presumably defendants, since the Government also moves for reciprocal discovery, Docket No. 253, Gov't Response at 51, although not specifying the manner for that production in general or regarding any electronically stored information) is to produce discoverable material, particularly certain ESI where the Federal Rules of Criminal Procedure are silent as to that issue. Thus, as a matter of first impression (at least in this District and Circuit, cf. United States v. O'Keefe, 537 F. Supp. 2d 14 (D.D.C. 2008) (Facciola, Mag. J.) (discussed below)), this Court will address the issues arising from the manner of this production. Other discovery motions will be considered in a separate Order.

Meanwhile, a Third Superseding Indictment[3] was filed on April 21, 2011 (Docket No. 202). For judicial economy, it is presumed that defendants (save where they have moved otherwise) have continued their motions filed under previous versions of the Indictment.

---

[2]For the defense: Docket Nos. 122, 193, 200, 214; for the Government, Docket Nos. 164, 190, 197, 213.

[3]As stated during the arraignment on the Third Superseding Indictment, see text minute entries, May 11, 2011, the only changes from the Second Superseding Indictment was to specify in Count 1 the end date of the alleged conspiracy and adjust the amount of cocaine mix to 28 grams or more and to no longer name a defendant who has plead guilty under the prior pleading.

## BACKGROUND

Ard and other defendants are charged with conspiracy to distribute cocaine and cocaine mixture and with the use of interstate communication facilities to commit a drug felony (Docket No. 202, 3rd Superseding Indict., Counts 1, 2-23).  Defendant Will Johnson is also charged with multiple counts of money laundering and engaging in unlawful monetary transactions (id., Counts 26-30).   The Third Superseding Indictment alleges that twenty-four defendants[4] were involved in this conspiracy (Docket No. 202), of whom seventeen have Criminal Justice Act appointed counsel, including counsel for defendant Damian Ard.

The criminal investigation leading to this Indictment and its superseded pleadings involved (among other tactics) court-authorized interceptions of cellular telephone communication indicating that defendants allegedly engaged in drug trafficking (see Docket No. 164, Gov't Atty. Aff. ¶ 3).  In its voluntary discovery, the Government furnished defense counsel with disks containing thousands of pages of documents "using the IPRO program routinely used by the United States's Attorney's Office in cases such as this, which involve multiple defendants charged with participating in drug conspiracies, and employing investigative techniques, such as court-authorized intercepted communications" as well as audio recordings of intercepted communications (id. ¶ 4, Ex. A).  The Government supplemented this information (id. ¶ 8, Ex. D; see, e.g., Docket No. 213, Gov't Atty. Further Aff. ¶ 2 (listing dates for service of additional discovery)).

---

[4]Six defendants have entered into plea agreements, Docket Nos. 139 (David Klozbach), 234 (Mark Robertson), 211 (Ryan Eick), 207 (Jan Jerge), 221 (Michael Valery), 264 (Mavis Walker); see Docket No. 185 (Judgment against Klotzbach), during the pendency of this motion.

Ard and those defendants who joined his motion have moved (among other relief) to compel production of call data from wiretaps in a particular format (Docket No. 122). This arises from the Government's voluntary discovery in this case (id., Mahoney Affirm. ¶ 3). Ard claims that the reported data has problems with omissions and inaccuracies (id., Mahoney Affirm. ¶ 6). This call data was collected and managed by a system called "VoiceBox," from JSI Telecom, (see id., Mahoney Affirm. ¶ 7). Ard objects to the failure of the Government to provide this call data "in the most useful form that is readily available" (Docket No. 122, Mahoney Affirm. ¶ 12), complaining that he has been presented with graphic images (".tiff" files, or hereinafter "TIFF") that cannot be sorted or searched and lack missing information (such as minimization data) that a ".pdf" file (or Portable Document Format, hereinafter "PDF") would have (id. ¶ 18). Ard wants the data presented either in its native format or in a "text-accessible" PDF (id. ¶ 14). Ard contends that the Government can produce, for example, reports of minimization data in the desired manner (id. ¶¶ 21-22). Without this information, Ard concludes that defendants cannot "within reason" determine "the average call length, the percentage of minimizations, and the accuracy of any minimization claims – all essential to challenging the government compliance with minimization requirements" (id. ¶ 23). Other defendants complain about the limitations of the Government's IPRO system for reviewing evidence (Docket No. 224, Hawkins Atty. Aff. ¶¶ 5-15). As for the warrant application documents, Ard complains that they were voluminous but also not text-accessible (Docket No. 122, Mahoney Affirm. ¶ 34). Ard argues that it would be costly in time and resources for defendants to have this data processed through an optical character recognition (or "OCR") program whereas the Government's own program has that capacity built in (id. ¶¶ 11, 34).

The Government responded to this initial bifurcation motion by claiming that defendants seek "to have this Court direct the government to produce discovery in a computer format they claim is more helpful or useful to the defendants" (Docket No. 164, Gov't Atty. Aff. ¶ 2). The Government notes that the VoiceBox system used by the Drug Enforcement Administration ("DEA," the investigating agency in this case) differs from the system used by the Federal Bureau of Investigation ("FBI") and thus the DEA's program has different reporting capabilities than the one used by the FBI (id. ¶ 9 & n.4). For example, the DEA system does not generate minimization data whereas the FBI system can do so (id. ¶ 17; see Docket No. 190, Gov't Atty. Further Aff. ¶ 2 (confirming that DEA cannot produce reports from its version of VoiceBox system software)). The IPRO system used by the United States Attorney's Office is "its national standard for all United States Attorneys' Offices," producing TIFF images that can be used in "Sanction," the Government's trial presentation tool (Docket No. 164, Gov't Atty. Aff. ¶ 10). The Government contends that the United States Attorney's Office did not have server space to retain an OCR copy of materials produced through the IPRO and such a duplication is cost-prohibitive (id.). The Government declines to provide the materials in their native format to prevent the disclosure of cooperators which was redacted when installed in IPRO (id. ¶ 12). The Government later reported that it was endeavoring to determine how to generate reports from the DEA's system that are sought by Ard (Docket No. 190, Gov't Atty. Further Aff. ¶ 2). The Government concludes that Ard and the other defendants here have "the data needed to assess whether a minimization challenge is advisable here" (id. ¶ 20, Ex. E (10 Day summary report)). The Government later moved for a Protective Order (Docket No. 199) where that redaction was incomplete and unredacted documents were inadvertently submitted to the defense, seeking

5

return of discovery materials (the IPRO disc), which was granted (Docket No. 201). The Government later asserts that approximately 14,500 pages of documents were produced to the defendants in the manner at issue here (see Docket No. 269, Gov't Atty. Aff. ¶ 6).

In reply and reiterating what was argued at the oral argument for the motion to bifurcate, Ard challenged the assertion that the DEA and FBI would have different versions of the VoiceBox system, and, citing Barry Stewart from JSI Telecom, stated that more recent versions of VoiceBox can generate the reports sought by the defense (Docket No. 193, Ard Atty. Aff. ¶¶ 8-10). Ard then asked that the Government produce its user manuals and like materials for the VoiceBox system and identify person(s) knowledgeable of the DEA's system (id. ¶¶ 33, 32, 34).

Ard and the Government in reply papers continue the debate as to the capabilities of the Government to produce this material in manner sought by the defense (see Docket Nos. 193 (Ard), 197 (Government), 213 (Government), 214 (Ard)). Ard later submitted to Chambers an ex parte application for a subpoena to the Government's vendor, JSI Telecom, but that application was not granted.

In further reply, the Government reasserts the prohibitive costs and lack of computer storage space on the United States Attorney's Office's server to reproduce the data it provided in PDF format (Docket No. 269, Gov't Atty. Aff. ¶¶ 4-6). The Government argues that it produced minimization data (albeit not in the precise format sought by the defense) but by other means (id. ¶¶ 7, 10) and contends that, given the defense's heavy burden in asserting a minimization challenge, the Government should not bear the burden of submitting another version of this data to suit the defendants (id. ¶ 8).

**DISCUSSION**

*Electronic Stored Information and Surveillance Information*

The issue of this portion of defense motions is not whether the Government complied with its obligations to produce under Rule 16, the Jencks Act, or Brady. Those more substantive questions will be addressed in another Order. The major issue here is the manner in which the Government produced voluminous documents generally and how it produced records from the electronic surveillance conducted in this case, including wiretap data to show whether the minimization requirements (to avoid unreasonable interception of non-pertinent conversations, see United States v. Ianiello, 621 F. Supp. 1455, 1470 (S.D.N.Y.), aff'd, 809 F.2d 1984 (2d Cir. 1985)) were met.

I.   Absence of Criminal Procedure Standard for Manner of Production

Federal Rules of Civil Procedure sets forth a procedure for electronic discovery that a party produce and permit inspection and copying of its "electronically stored information . . . stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form," Fed. R. Civ. P. 34(a)(1)(A). This Court's Local Civil Rules expressly consider the manner for production of electronically stored information, including the formats in which that data is stored, W.D.N.Y. Loc. Civ. R. 26(f), (f)(5). The amendments to these rules incorporated express provisions for the handling of electronically stored information.

There is no such express ESI regime, however, for criminal cases, O'Keefe, supra, 537 F. Supp. 2d at 18-19; Daniel B. Garrie and Daniel K. Gelb, E-Discovery in Criminal Cases: A Need for Specific Rules, 43 Suffolk U. L. Rev. 393, 399-400 (2010). The few commentators on this

subject note that this problem would be best solved by ESI discovery rules particularly tailored for criminal cases, with one commentator concluding that wholesale borrowing of the Federal Rules of Civil Procedure for ESI discovery may not be appropriate for the different needs in criminal cases as opposed to civil actions, Jared Beckerman, O'Keefe and the Wheel that Begs for Reinvention: An Exceptionalist Approach to Electronic Discovery in Criminal Actions, 7 Nw. J. Tech. & Intell. Prop. 175, 176-77 (2010); see also Garrie and Gelb, supra, 43 Suffolk U. L. Rev. 393.

The Federal Rules of Criminal Procedure, as distinct from the purposes of the Federal Rules of Civil Procedure (cf. Fed. R. Civ. P. 1), "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay," Fed. R. Crim. P. 2. Criminal procedure has inherent certain constitutional liberty and due process interests, see generally U.S. Const. Amend. IV, V, VI, VIII, that are not present in civil cases. Federal Rules of Civil Procedure are rarely applied in criminal cases. In fact, the Judicial Conference has two separate advisory committees on rules to propose amendments to the civil and criminal rules, cf. 28 U.S.C. § 2073(a)(2), (b).

II.     Federal Rule of Criminal Procedure 16(d)

Federal Rule of Criminal Procedure 16 governs discovery in criminal cases. That rule requires the Government to produce a defendant's statement, in particular any written or recorded statement by the defendant in the Government's possession, custody, or control that are known by the United States Attorney exists, Fed. R. Crim. P. 16(a)(1)(B)(i). Other statutes, rules, and caselaw direct the Government (and in some instances due to reciprocal discovery, the defendant)

to produce other types of discovery–these are well known motions in a defense omnibus motion (for example, production of Brady[5] and Giglio[6] materials, Jencks Act[7] materials and the timing of their production relative to the start of the trial or the testimony of a witness). The focus of this rule (and the others) is the type of records that the Government needs to produce rather than the manner of its production or the forms in which those records may be retained. In this District, the Local Criminal Rules do not address ESI, or even incorporate by reference the analogous civil rules which address ESI discovery although other civil provisions were incorporated by reference into the local criminal rules, cf. W.D.N.Y. Local Crim. R. 57(a) (rules for attorney admissions incorporating W.D.N.Y. Local Civil Rules 83.1, 83.2, 83.3, 83.6, and 83.7 for attorney admission and conduct). Criminal discovery differs from civil discovery and does not have the equivalent scope as in civil discovery, United States v. Hancock, 441 F.2d 1285, 1287 (5th Cir.), cert. denied, 464 U.S. 833 (1971); see also Beckerman, supra, 9 Nw. J. Tech. & Intell. Prop. at 183-86 (constitutional basis for distinctions between civil and criminal procedural rules).

  The Court may grant appropriate relief in discovery, Fed. R. Crim. P. 16(d)(1), providing in pertinent part, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief," Fed. R. Cr. P. 16(d)(1). This general authority includes ordering the manner of production, see United States v. Warshak, 631 F.3d 266, 296 (6th Cir. 2010) (decision on criminal discovery reviewed on an abuse of discretion standard); see also United States v. Aref, 553 F.3d 72, 80 (2d Cir. 2008) (decision to issue a protective Order is

---

[5] Brady v. Maryland, 373 U.S. 83 (1963).

[6] Giglio v. United States, 405 U.S. 150 (1972).

[7] 18 U.S.C. § 3500.

reviewed for abuse of discretion and whether evidence is material to the defense or helpful is within the district court's discretion); United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) (abuse of discretion in refusing to conduct suppression hearing); United States v. Gonzalez, Crim. Action No. 09-10223-PBS, 2009 U.S. Dist. LEXIS 50791 (D. Mass. May 26, 2009) (setting out ESI discovery procedure in criminal case, pursuant to authority under R. 16(d)(1)); cf. Fed. R. Crim. P. 16(d)(2)(A) (party fails to comply, court may specify the manner of discovery and prescribe "other just terms and conditions"). Rule 16, unlike its civil counterparts (Fed. R. Civ. P. 26-37), does not specify the manner in which such production is done, Warshak, supra, 631 F.3d at 296, 297; see United States v. Hazelwood, No. 1:10cr150, 2011 U.S. Dist. LEXIS 68481, at *61-62 (N.D. Ohio June 27, 2011) (holding that the Government has no general duty to segregate Brady material and locate it for defendant, save where the Government has volunteered to undertake that task). Such decisions as to the manner of production are left to the discretion of the Court under Rule 16(d)(1). At least one court has recognized that "some necessary flexibility exists in the Federal Rules of Criminal Procedure to order actions not expressly sanctioned in the Rules," United States v. Salyer, CR. No. S-10-0061, 2011 U.S. Dist. LEXIS 41763, at *26 (E.D. Cal. Apr. 18, 2011).

III.     Cases Regarding the Manner of Criminal ESI Production

As noted by the Sixth Circuit in Warshak, supra, 631 F.3d at 296, there is scant authority on the manner to which parties are to produce discovery in criminal cases. In the only other published decision involving production of criminal ESI found on this topic, the United States District Court for the District of the District of Columbia applied Federal Rule of Civil Procedure 34 to a criminal prosecution involving extensive document production, United States

v. O'Keefe, supra, 537 F. Supp. 2d at18-20 (see Docket No. 259, Defs. Reply Memo. at 6), conceding that there is no equivalent criminal rule for the format of production in criminal prosecutions, id. at 18-19; see Warshak, supra, 631 F.3d at 296 & n.26. The O'Keefe court adopted Civil Rule 34 in the absence of a criminal standard, given the age and universal acceptance of the Civil Rules, 537 F. Supp. 2d at 19, although the amendments adding civil ESI discovery rules are only five years old, Adv. Comm. Notes, Fed. R. Civ. P. 26, 34, 37, 45 (amended subpoena rule) (2006).

In Warshak, the Sixth Circuit noted that the volume of discovery there was "prodigious," 631 F.3d at 295 (3 tera-drives or 17 million pages of electronic materials plus 506,000 pages of hard-copy documents seized). Defendants there argued that the district court abused its discretion and violated their right to a fair trial in allowing the Government "to turn over stupendous quantities of evidence in a disorganized and unsearchable format," id., also violating its obligations under Brady[8] in producing "gargantuan 'haystacks' of discovery that swallowed any 'needles' of exculpatory information," id. They claimed that the material was difficult to search and was not indexed. Defendants concluded that Federal Rule of Civil Procedure 34(b)(2)(E)(i) and its obligation for the proponent of documents to organize and label them to correspond to the categories in the request should apply to this prodigious criminal production. Warshak, supra, 631 F.3d at 295; cf. id. at 295 n.25 (defendants conceding that the Government did index the hard-copy documents produced). In affirming the district court's denial of defendants' motion, the Sixth Circuit noted that Federal Rule of Criminal Procedure 16 is "entirely silent on the issue of the form that discovery must take; it contains no indication that

---

[8]Brady v. Maryland, 373 U.S. 83 (1963).

11

documents must be organized or indexed," id. at 296.  The Sixth Circuit declined to find that the district court abused its discretion in the "pronounced dearth of precedent suggesting that the district court was wrong," id.  Noting that an overwhelming majority of the information came from a defendant's computers, the Sixth Circuit found that "the defendants had ready access to that information [and] . . . that the defendants had access to the documents 'as they [were] kept in the usual course of business,'" id. (quoting Fed. R. Civ. P. 34(b)(2)(E)(i)), concluding that "any difficulty that the defendants had in accessing the copies is arguably immaterial," id., with any disorganization attributed directly to defendants themselves, id. at 296 n.27.  By citing in their motions from this discovery, defendants there had shown they were capable of navigating the discovery and that an expert testified that a particular software would allow those defendants to search the electronic data, id. at 296.  Finally, the Government there provided a room-by-room inventory of what was seized, which the Sixth Circuit concluded could guide defendants in identifying and marshaling documents, id. at 296-97.  Even in noting the absence of a criminal discovery standard, the Sixth Circuit applied (and rejected) defense arguments based upon compliance with Federal Civil Rule 34.

      The "typical" criminal case usually does not have the volume of documents that was presented either in this case, O'Keefe, or Warshak.  But, as the technology becomes more prevalent, the Government and defendants will come to produce more and more ESI (as the original source for evidence, such as in crimes involving computers, or as a means to compile evidence) along with other, traditional forms of discovery.  There may be more criminal conspiracy cases like this one where the quantity of documents that show the scope and participants in the conspiracy can only be best presented in an electronic format.  The Justice

Department recognizes that production may include materials in electronic format, see Deputy Atty. Gen. Ogden, Memo. for Department Prosecutors (Jan. 4, 2010), and appears to have at least one working group considering the "best practices" for criminal electronic discovery (Docket No. 259, Defs. Jt. Reply Memo. at 2-3 & n.2, 5). The problem now is that, absent a rule, each judge faced with a motion to compel criminal discovery with ESI data will have to devise his or her own scheme for ESI discovery based upon the relief sought by the parties, define what is the standard for production of that ESI material, and determine whether the producing party has satisfied the newly proclaimed standard for production and which party–the Government or defense–is to bear the costs (both in money, time, technological competence, and memory space) associated with ESI discovery.

In O'Keefe, the court borrowed the Federal Rules of Civil Procedure and its standards for producing vast quantities of documents electronically in a manner in which the documents were ordinarily maintained or organized and labeled to correspond with requested categories, 537 F. Supp. 2d at 19-20; see Fed. R. Civ. P. 34(b)(2)(E)(i). In its discussion of metadata, the O'Keefe court applied Federal Rule of Civil Procedure 34(b)(2)(E)(ii) and (iii) and found that the Government's production of these documents as either PDF or TIFF files would suffice "unless defendants can show that those formats are not 'reasonably usable' and that the native format, with accompanying metadata, meet the criteria of 'reasonably usable' whereas the PDF or TIFF formats do not," 537 F. Supp. 2d at 23. In Gonzalez, the court issued a Protective Order in a case that appears to involve some sort of computer fraud, see 2009 U.S. Dist. LEXIS 50791, at ¶ 1.c. (list of "electronic contraband"), and the court set out the specific parameters for ESI production pursuant to the Government's motion for a Protective Order, restricting access on the defense

side to the produced material, id., 2009 U.S. Dist. LEXIS 50791. Production appears to be primarily from one software platform, notwithstanding the defense's ability to move for additional discovery or production in a different form and (save an Order to the contrary) the Government was not obligated to produce copies available in that format, id. at ¶¶ 2, 3. In Salyer, the court considered (but then declined) to impose the costs of establishing a common database on the Government and defendant in a mega-document ESI case, involving up to 1-2 terabytes of information, 2011 U.S. Dist. LEXIS 41763, at *27-28, 5.

IV. Application in This Case

Therefore, in the absence of an express criminal procedure rule dealing with the manner of production of this type of information and pursuant to Fed. R. Crim. P. 16(d) and its inherent authority to grant appropriate relief in criminal discovery disputes, this Court determines that **the Government** is the party better able to bear the burden of organizing these records for over twenty defendants in a manner useful to all. The Government is either to reproduce its disclosure in a searchable format (PDF, for example) or in the native format, indicating the manner of that reproduction. This choice in production is still left to the Government. If it wishes to avoid disclosure of cooperators and retain redactions as presented in IPRO it may present the IPRO material in a PDF searchable format rather than the native format of the original materials.

This Court determines that, as between the Government and defense, the Government is in the better position to organize this mass of information and re-present it in a manner that is searchable by the defense. First, the Government compiled this electronic information from its

various native forms into a common electronic database[9] for production to defense counsel. Second, rather than have each defendant compile, at a minimum, the data involving that party or each defendant repeat the expense of reproducing the entire Government production or have one or a few defendants bear that cost for the benefit of the all defendants, the Government should do this effort.  There may be ethical concerns for one defense counsel to assume the obligation of reproducing the discovery for the co-counsel, see Fed. R. Crim. P. 44(c); N.Y. Prof. Conduct R. 1.7(a)(1), (b)(3); see also United States v. Curcio, 694 F.2d 14, 23 (2d Cir. 1982) (Friendly, J.); Glasser v. United States, 315 U.S. 60, 70 (1942); Cuyler v. Sullivan, 446 U.S. 335, 348 (1980) (multiple representation does not violate Sixth Amendment unless it gives rise to a conflict of interest, citing Holloway v. Arkansas, 435 U.S. 475, 482 (1978)).

    This Court, however, need not go as far as the District of District of Columbia in O'Keefe and adopt the pertinent Federal Rules of Civil Procedure wholesale as the standard for production of criminal ESI.  For purposes of the motion **in this case**, the standard of Federal Rule of Civil Procedure 34(b)(2)(E)(ii) **should apply here**, that is the Government produces this ESI "in a reasonably usable form or forms."  While Rule 34(b)(2)(E) notes options for production as documents "are kept in the ususal course of business," Fed. R. Civ. P. 34(b)(2)(E)(i), here that would lead either to producing these materials in their native formats (with the redaction issues discussed above) or via IPRO with its limited search capabilities (since IPRO is the Government's usual course of business to present such quantities of information for trial.  That rule also states that "a party need not produce the same electronically stored information in more

---

[9]This may not be an apt description of the discovery produced by the Government, as it may contain several databases compiled in the IPRO system and copied on to the disks produced to defense counsel.

than one form," id., R. 34(b)(2)(E)(iii).  But here the Government is ordered to replace the production by IPRO and produce it in another way.

Previously, this Court has ordered the Government, in another case, to reproduce its voluminous voluntary discovery in "some readily accessible format" upon the motion of a defendant.  In that case, the Government produced CD-Rom disks containing 60,000 pages of defendant's files without any index.  United States v. Soliman, No. 06CR236A, Docket No. 66, 2008 U.S. Dist. LEXIS 76358, at *11-12 (W.D.N.Y. Sept. 30, 2008) (Scott, Mag. J.).  The issues of criminal ESI discovery were implied in that case but not expressly asserted as here, where the manner of electronic production is at issue.  The paper age equivalent of what occurred in Soliman would have been if the Government opened a conference room filled with banker's boxes of defendant's records and invited defense counsel to inspect it, where the boxes were not indexed.  This is similar to what occurred here.  The paper equivalent would be if the Government took photographs of thousands of pages (which the TIFF files are), put them in boxes, and invited inspection by defense counsel.

Use of the conveniences of electronic storage avoids the problems of the warehouses full of documents and "docu-dump" discovery prevalent in civil practice almost a generation ago.  But these techniques are also being used in criminal practice.  While the rules for such ESI have been developed (and are being fleshed out) on the civil side of litigation, this case gives the example of the need for a more uniform regime on the criminal side.  It is hoped that the Advisory Committee on Criminal Rules will take note of the omission and address it at the earliest opportunity.  Until then, and to decide the motions before this Court, **the Government is**

**to bear the burden of reproducing these ESI materials in a fashion that defendants can retrieve and manipulate** as discussed in this Order.

## CONCLUSION

For the reasons stated above, so much of defendants' motion to compel (Docket Nos. 225 (Ard and other defendants' joint motion); Docket Nos. 217 (Cruz), 220 (Beasley), 223 (Dolly), 224 (Hawkins), 227 (Bobby Spencer), 230 (joinder motion of defendant Ainsworth), 232 (joinder motion of Beasley), and 233 (joinder motion of defendant Barton)) regarding electronically stored information is **granted**; the Government is to produce the electronically stored information in a PDF format suitable for searching or in the information's native format, at the Government's choice. The other discovery relief sought by defendants shall be addressed in a separate Order.

So Ordered.

                                                 */s/ Hugh B. Scott*
                                                 Honorable Hugh B. Scott
                                                 United States Magistrate Judge

Dated: Buffalo, New York
       September 8, 2011