UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**Hon. Hugh B. Scott**

10CR184S

ANTONIO BRIGGS, et al.,

**Order**

Defendants.

Before this Court are two motions seeking reconsideration or amendment to two discovery Orders entered by this Court (Docket Nos. 291, 293). The first motion (Docket No. 308[1]) by defendant Damian Ard and others joining him[2] (hereinafter referred to collectively as "Ard") seek to amend and correct the Order of September 8, 2011 (Docket No. 291), which addressed production of certain electronically stored information (or "criminal ESI"), see also

[1]In support of this motion, moving defendants submit (in addition to the original motion, Docket No. 308)) Ard's attorney's supplemental affirmation, Docket No. 322, objecting to the Government's efforts in producing VoiceBox materials and adjourning argument of the first motion; and their reply, Docket No. 330.

In response, the Government submits its attorney's affidavit in opposition, Docket No. 319; its consolidated response to both motions, Docket No. 325 (also known as "Gov't Consol. Response"), with exhibits, and relies upon its initial responses to the initial motion, Docket No. 325, Gov't Consol. Response at 2; Docket No. 253.

This Court previously considered defendants' omnibus discovery motions (Docket No. 225 (Ard and other defendants' joint motion); Docket Nos. 217 (Cruz), 220 (Beasley), 223 (Dolly), 224 (Hawkins), 227 (Bobby Spencer), 230 (joinder motion of defendant Ainsworth), 232 (joinder motion of Beasley), and 233 (joinder motion of defendant Barton)).

[2]Joining Ard in this motion are Briggs, Torano Spencer, Cruz, McTigue, Dolly, Sidebottom, Johnson, Walker, Woodward, and Hawkins, Docket No. 308. Defendant Beasley separately moved to join the motion to amend and correct, Docket No. 310.

In the initial motion, the movants were Ard, Briggs, Torano Spencer, Cruz, McTigue, Dolly, Sidebottom, Johnson, and Walker, Docket No. 225.

United States v. Briggs, No. 10CR184, 2011 U.S. Dist. LEXIS 101415 (W.D.N.Y. Sept. 8, 2011) (Scott, Mag. J.). Ard seeks to amend and correct this criminal ESI Order to illuminate the manner in which certain specific types of electronically stored items defendants sought should be produced (Docket No. 308).

Their second motion (Docket No. 316[3]) seeks to reconsider the Order of September 9, 2011 (Docket No. 293), which addressed omnibus discovery motions filed or joined by the defendants, wherein the moving defendants now contend that certain issues were not considered either by the Government or this Court.

Familiarity with those Orders, and other prior proceedings, is presumed.

Response to the motion to amend and correct was due by October 11, 2011, and the argument of this motion initially was set for October 14, 2011 (Docket No. 311). On October 6, 2011, after defendants filed the motion for reconsideration (but prior to the Government's response, Docket No. 319, wherein it requested in part to adjourn its submissions), the Court set responses to that motion to be due by October 24, 2011, and rescheduled argument of both motions on October 26, 2011 (Docket No. 317), and the motions were argued and deemed submitted on October 26, 2011.

[3]In support of this motion, defendants submit (in addition to the motion, Docket No. 316) their reply, Docket No. 330. Ard separately submitted his notice regarding reciprocal discovery, Docket No. 314, an item considered in the omnibus discovery Order, Docket No. 293, at 14-15.

In response, the Government also submits its attorney's affidavit in opposition, Docket No. 319, and Gov't Consol. Response, Docket No. 325, and relies upon its initial responses to the initial motion, Docket No. 325, Gov't Consol. Response at 2; Docket No. 253.

## BACKGROUND

Ard and the other defendants are charged with conspiracy to distribute cocaine and cocaine mixture and with the use of interstate communication facilities to commit a drug felony (Docket No. 202, 3rd Superseding Indict., Counts 1, 2-23). Defendant Will Johnson is also charged with multiple counts of money laundering and engaging in unlawful monetary transactions (id., Counts 26-30). The Third Superseding Indictment alleges that twenty-four defendants[4] were involved in this conspiracy (Docket No. 202).

*ESI Discovery Order and Defense Motion to Amend and Correct It, Docket No. 308*

The ESI Order commanded the Government to either reproduce its disclosure to defendants in a searchable format (in PDF, for example) or in its native format, at the choice of the Government (Docket No. 291, Order of Sept. 8, 2011, at 14), see Briggs, supra, 2011 U.S. Dist. LEXIS 101415, at *23-24, with the Government to bear the burden of reproducing these ESI materials in a fashion that defendants can retrieve and manipulate them as discussed in that Order (id. at 17).

Ard now moves to correct and amend this Order to differentiate the different areas of disclosure and discovery involved and to specify the methods for the Government's production of specific categories of materials (Docket No. 308, Ard Motion to Correct, at 1).

In particular, Ard identifies four categories of discovery items that need specific care, including an item Ard contends was not addressed by either the Government or this Court in

---

[4]Six defendants have entered into plea agreements, Docket Nos. 139 (David Klozbach), 234 (Mark Robertson), 211 (Ryan Eick), 207 (Jan Jerge), 221 (Michael Valery), 264 (Mavis Walker); see Docket No. 185 (Judgment against Klotzbach), during the pendency of the earlier discovery motions.

Ard's earlier motion (id. at 9). First, Ard seeks a spreadsheet compiling the wiretap data and presenting the material in HTML formatting to that spreadsheet (id. at 1-3). Second, Ard wants the Government to implement fully the functionality of the IPRO system it has so that all documents can be processed through an optical character recognition (or "OCR") process (id. at 3-6). Among the features Ard claims are not used by the Government from IPRO is issue tagging, sticky notes, creation of data fields, and unitization of the compiled documents (id. at 4-5). Third, Ard seeks full-text searchability for the documents produced, either by producing them in their native file formats as a Word or WordPerfect document or creating directly generated PDFs for these items (id. at 7). In summary, Ard wants the Court to differentiate between different categories of production, with data from the VoiceBox system produced in an Excel-like spreadsheet; scanned images with unitized documents, Bates stamped, and placed in appropriately named folders; and text material in native formats (id. at 8). Finally, Ard notes that neither the Government nor this Court considered his motion regarding disclosure of settings for VoiceBox necessary to interpret the call data (id. at 9, citing to Docket No. 225, Ard Motion ¶¶ 53-55, 58-62). The original motion sought documentation of the settings of the VoiceBox recording sessions for minimization and auto minimization and for the "Put Away" function or a like setting that permits recordings to continue although not monitored (Docket No. 225, Ard Motion ¶¶ 53-55). He also sought session event summaries for each VoiceBox recording filtered either for minimization events or "put away" events (id. ¶¶ 58-59), and session history reports filtered for minimization, "put away," and "off hook" transmissions that were intercepted (id. ¶¶ 60-62).

Initially, the Government responds that it has produced DVDs processed with optical character recognition (or "OCR") in compliance with the ESI Order (Docket No. 319, Gov't Atty. Aff. ¶¶ 2-3; Docket No. 325, Gov't Consol. Response at 18).

Ard replies that the Government has not responded to this motion (Docket No. 330, Ard Reply at 1).

*Defense Motion to Reconsider Docket No. 293 Order, No. 316*

Ard then moved to reconsider Docket No. 293 Order because certain specific discovery requests made in their initial joint omnibus Motion were not addressed by the Order or were addressed as to other, non-joining defendants and Ard now seeks to highlight points raised in their initial joint motion (Docket No. 316, Jt. Motion at 1-2). First, Ard seeks statements of a co-conspirator which will be relied upon at trial by the Government either to show the existence of a conspiracy or to justify admissibility of hearsay testimony (id. at 2-3). Next, Ard is not satisfied with the scientific evidence produced by the Government (cf. Docket No. 293, Order at 5); he contends that he requested specific tests from the databases contained in the testing equipment to compare the samples with databases of known substances (Docket No. 316, Jt. Motion at 3-5). The Government's production of scientific materials did not include written notes, reference materials (id. at 5). Ard contends that the Government intends to produce its expert disclosure only upon the condition that defendants stipulate to concede elements of the offense regarding the nature of the seized materials (id.).

Next, Ard wants to know which Grand Jury rendered the Superseding Indictments since it had a different foreperson than was identified for the initial Indictment (id. at 6-7). Ard wants Grand Jury materials (not necessarily the minutes) establishing that either the same Grand Jury

which rendered the initial Indictment rendered its Superseding Indictments or that a full presentation of the evidence was given to a new Grand Jury that rendered the Superseding Indictments. Ard also wants to know whether the Grand Jury was instructed as to the law. (Id.).

Ard also wants the visual and audio identification procedures used, despite the Government's assertion that its intention is not to introduce a photographic array or like at trial (id. at 8). As for documents, Ard wants the Government to specifically identify which documents it intends to use at trial rather than relying merely upon the mass production of materials and claiming generally that all would be used as evidence (id. at 8-10). Ard objects to the Government withholding witness statements on the claim that those statements (even those favorable to the defense) are Jencks Act materials not subject to pretrial disclosure (id. at 10-12).

The key omission for Ard is the fact that the Court did not address the extensive, unapproved redaction of wiretap transcripts and search warrants (id. at 12-13).

Finally, Ard disagrees with the Government's definition of "exculpatory" materials under Brady and takes a broader view of what should be produced, aside from Jencks Act materials under Brady, and faults the Order for not addressing this point (id. at 14-15; see Docket No. 226, Jt. Memo. at 5-10; Docket No. 259, Jt. Reply at 21).

*The Government's Response*

The Government responds (Docket No. 325) that it produced within its obligations under Federal Rule of Criminal Procedure 16 (id. at 1 n.2, at 4), and that it has sufficiently produced during its voluntary disclosure and subsequent production (id. at 2, Ex. A). The Government believes this complies with the criminal ESI Order in most aspects (id. at 2). The Government is endeavoring to produce the VoiceBox data in another manner in order to retain the integrity of

the data while making it searchable (id. at 2 n.3). As for producing co-conspirator statements, the Government opposes as being beyond the scope of defendant's statements under Rule 16(a)(1)(A)-(C) (id. at 5). The Government declares that it does not intend to use co-conspirator statements that may be used as hearsay because these statements were not made in the course of or in furtherance of the conspiracy (id. at 6). The Government concludes that these co-conspirator statements are not subject to pretrial disclosure before the Government offers evidence to establish a conspiracy, but the Government will produce these items as ordered by the trial Court (id. at 7).

As for the scientific materials, the Government offers to produce discoverable materials in its possession (id. at 8). The Government will produce expert disclosure, including credentials and methods of analysis, if a defendants declines to stipulate that controlled substances are as they have been identified during chemical analysis (id.).

**DISCUSSION**

I. Amending and Correcting Order, Motion Docket No. 308

A. Limits of Criminal Rule 16 and Manner of Discovery

As noted in the ESI Order (Docket No. 291, Order at 7-8), Briggs, supra, 2011 U.S. Dist. LEXIS 101415, at *13, there is no specific federal criminal rule regarding the manner of criminal ESI production (or the manner of production in general, cf. Fed. R. Cr. P. 16; Briggs, supra, 2011 U.S. Dist. LEXIS 101415, at *16-17 (Docket No. 291, Order at 10) whereas the Federal Rules of Civil Procedure sets the foundation for handling ESI and provides a standard for dealing with the particular discovery demand. The basis for the criminal ESI Order is the Court's authority under Federal Rule of Criminal Procedure 16(d) generally "for good cause" to "deny, restrict, or defer

discovery or inspection [and] grant other appropriate relief," Fed. R. Cr. P. 16(d). This general rule does not give the parameters of when a party's request for relief ought to be granted. Generally, Criminal Rule 16 dictates what is to be produced and is silent as to the manner and methods of production. This case provides an example of the perils of not having express rules about the manner and methods of criminal discovery. Merely because the material is compiled electronically in a criminal case does that mean that a requesting party can have that material produced exactly in the manner they seek. This Court thus adopts the analogous civil standard from production.

The Federal Rules of Civil Procedure again may provide guidance. Federal Rule of Civil Procedure 34 sets forth a procedure for electronic discovery that a party produce and permit inspection and copying of its "electronically stored information . . . stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form," Fed. R. Civ. P. 34(a)(1)(A) (emphasis added). The rule also provides that a responding party may produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request, id. R. 34(b)(2)(E)(i). Where the request does not specify the form for ESI production, it may be produced in the forms in which it is ordinarily maintained or in a reasonably usable form or forms, id. R. 34(b)(2)(E)(ii).

In a civil action, the responding parties to discovery demands are not obligated under the Federal Rules to organize their records to suit the requesting party's demands. Civil Rule 34(b)(2)(E) gives the responding party the option either to produce the documents in the manner they are usually kept or produce them in the categories sought. That rule does not

require the responding party to alter their record keeping to meet the requesting party's discovery categories, In re Adelphia Communications Corp., 338 B.R. 546, 551 (Bankr. S.D.N.Y. 2005) (citing cases); Pass & Seymour, Inc. v. Hubbell, Inc., 255 F.R.D. 331, 334 (N.D.N.Y. 2008) (Peebles, Mag. J.) (under Civil Rule 34(b)(2), the responding party clearly controls the manner of production and which of two methods would be employed); Five Borough Bicycle Club v. City of N.Y., No. 07 Civ. 2448, 2008 WL 704209, at *2 (S.D.N.Y. Mar. 10, 2008) (city made documents available to plaintiffs as they were kept in the usual course of business, as inconvenient as this may have been to plaintiffs); see Wright & Miller, Federal Practice and Procedure § 2213 (Civil 2011, available on Westlaw) (in first instance, the responding party should retain right to choose between production formats under Rule 34(b)); Edward F. Sherman & Stephen O. Kinnard, Federal Court Discovery in the 80's–Making the Rules Work, 95 F.R.D. 245, 258 (1981) (commentators assume that responding party decides whether to produce records in usual course of business or in categories sought by requesting party). The responding party producing documents in the usual course of business then bears the burden of demonstrating that the documents produced were in fact maintained in that manner in the usual course of business, Pass & Seymour, Inc., supra, 255 F.R.D. at 333, 334. Having chosen the usual course of business alternative in producing documents, a responding party need not categorize the production or label and organize them to correspond to a specific request, CP Solutions PTE, Ltd. v. General Elec. Co., No. 3:04cv21590(JBA)(WIG), 2006 WL 1272615, at *3 (D. Conn. Feb. 6, 2006) (Garfinkel, Mag. J.); see Wrenn v. Board of Directors, Whitney M. Young, Jr. Health Center, Inc., No. 85CV1096, 1989 WL 23135, at *2 (N.D.N.Y. Feb. 21, 1989) (denying

sanctions motion where records were produced in manner they were maintained in ususal course of business and not in categories sought by plaintiff).

B. Application to Defendants Proposed Amendments and Corrections

Ard here seeks to have certain items of discovery produced to him (and the joining defendants) in the manner they seek. As for the first category (spreadsheets of call data), using the Civil Rules as a model, the Government **should not be required to compile this data** (even if technically feasible) to suit the moving defendants, see also United States v. Hazelwood, No. 1:10cr150, 2011 U.S. Dist. LEXIS 68481, at *61-62 (N.D. Ohio June 27, 2011) (Government has no general duty to segregate Brady material and locate it for defendant). Essentially, Ard is seeking a summary of the call data in spreadsheet form where there is no basis for the Government to summarize or collate the data for the defense.

As for the second category, document production using more of the functions of IPRO, some of those features such as issue tagging, sticky notes, data fields, and unitization, may in fact reveal the Government's theory and attorney work product, for example, how a particular document is identified for tagging or selection in a unit may well reveal the Government's theory of the case. In the paper universe, the equivalent would be to require the Government to place boxes of documents in labeled categories where the Government, in the ordinary course of its operations, did not so organize or potentially reveal its theory of how the documents are to be classified. As with Bills of Particulars (see Docket No. 293, Order of Sept. 9, 2011, at 8), the Government is not obligated to "preview its case or expose its legal theory," United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977). Absent a unifying method for subdividing the materials that does not reveal

the Government's theory, Ard's request for the Government's compelled use of these devices from IPRO is **denied**.

As for the third category, producing text documents in native file formats, the ESI Order had left the choice of method for reproduction to the Government (Docket No. 291, Order at 14), Briggs, supra, 2011 U.S. Dist. LEXIS 101415, at *23-24. As similar to the civil procedure standard, this Court adheres to that decision and leaves the choice of methodology of production to the Government. Ard's motion to compel the production of native file forms is **denied**.

As in the best civil practice, cf. Fed. R. Civ. P. 37(a)(1) (certification requirement of good faith efforts to confer on dispute prior to moving to compel), the parties should work out among themselves the details of discovery (such as having non-attorney intellectual technology experts for both sides work out details of ESI production) and not have this Court micro-manage discovery in this case. Ard's motion to amend and correct the ESI Order (Docket No. 308) is **denied**.

II. Unaddressed ESI Discovery Issue–VoiceBox Settings

Ard now cites to certain outstanding issues that were not addressed either by the Government or by this Court regarding the VoiceBox settings to interpret the call data (Docket No. 308, Ard Motion at 9; see Docket No. 225, Ard Initial Motion, ¶¶ 53-55, 58-62). The Government argues that Rule 16 does not require additional disclosure here, particularly regarding the VoiceBox system since VoiceBox "is a law enforcement sensitive investigative tool" used to implement Court-ordered wiretaps and the materials sought (manuals, reports and the like) for which the Government claims qualified law enforcement privilege (Docket No. 325, Gov't Consol. Response at 18-19). This protected information also includes law enforcement

techniques and procedures (id. at 19), see Dinler v. City of N.Y. (In re City of N.Y.), 607 F.3d 923, 944 (2d Cir. 2010).

While defendants are trying to obtain VoiceBox settings in order to analyze the call data, this would cause the Government to reveal techniques and procedures subject to the law enforcement privilege. The Government here bears the burden of showing that the law enforcement privilege applies to the sought documents, id., and has met that burden. Defendants' motion for this information **is privileged and thus denied**.

III. Motion to Reconsider, Docket No. 316

In the second motion for reconsideration (Docket No. 316), Ard raises several issues that either were not addressed in the omnibus discovery Order (Docket No. 293) or were addressed for other defendants but the Court did not consider Ard's particular arguments. This Court now addresses these contentions.

A. Statements of Co-Conspirators

This Court **declines** Ard's request to reconsider its earlier denial (Docket No. 293, Order at 13) of release of co-conspirator statements. The statements Ard seeks, of co-conspirators the Government intends to use to establish elements of the conspiracy, are statements of a witness testifying on behalf of the Government, disclosure of which is governed by the Jencks Act, In re United States, 834 F.2d 283, 286 (2d Cir. 1987), which this Court is powerless to modify or amend, id. at 287. Thus, Ard's motion on this ground is **denied**.

B. Scientific Evidence and Expert Disclosure

On the scientific materials and expert disclosure, Ard makes much of the Government's apparent insistence that defendants stipulate to the identification of controlled substances prior to

release of expert disclosure (e.g., Docket No. 316, Jt. Motion at 5). But the Government is offering to produce expert's credentials and methodology only if it is sure that a defendant disputes whether a substance has been identified to a controlled substance, hence requiring expert testimony (including the background material on the expert's credentials) on this now contested fact. If a defendant concedes the nature of the seized substance, there would be no need to produce expert testimony (including credentials for that expert); but if that defendant challenges this element of the offense, then the Government will make production. This is not to create hurdles for the defense or cause a waiver of rights. Therefore, Ard's motion on this ground is **deemed moot** because Ard (and the other defendants) either will stipulate to the identification of the substance (and thus have no need for expert testimony about it) or will contest this element and receive the expert disclosure.

On the production of underlying data or testing for other substances, defendants have access to the sample and can conduct their own tests and, if contested, cross-examine the Government's experts as to their findings on the composition of these substances. Ard's motion on this ground is **denied**.

C. Grand Jury and Superseding Indictments

On disclosure of the Grand Jury proceedings surrounding the Superseding Indictments, the Government asserts the presumption of regularity of the Grand Jury's proceedings to preclude disclosure of their minutes (Docket No. 325, Gov't Consol. Response at 9-11), asserting that each Superseding Indictment was issued by the Grand Jury empaneled November 6, 2009 (id. at 11 n. 6).

As previously stated (Docket No. 293, Order at 10-12), under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), this Court may authorize the disclosure of a Grand Jury matter at the request of the defense who shows that a ground may exist to dismiss the Indictment because of a matter that occurred before the Grand Jury. The Court may authorize this disclosure "at a time, in a manner, and subject to any other conditions that it directs," id. Defendants had to show that they have a particularized need for disclosure that outweighs the Government's interest in maintaining Grand Jury secrecy, United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988); see United States v. Twersky, No. S2 92 Cr. 1082, 1994 U.S. Dist. LEXIS 8744, at *14-16 (S.D.N.Y. June 29, 1994) (granting in camera review of Grand Jury minutes and reserving decision on motion to dismiss Indictment). A defendant must state a particularized need for these transcripts "in order to present a vigorous defense" which outweighs the principle of Grand Jury secrecy, Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959). The burden is upon the defendant to show a particularized need exists that outweighs the policy of Grand Jury secrecy, id. Particularized need includes impeachment of a witness at trial, to refresh recollection, and to test witnesses credibility, United States v. Proctor & Gamble Co., 356 U.S. 677, 683 (1958). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct," United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990), and (even if disclosed) "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants," Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); Torres, supra, 901 F.2d at 233.

Again, as was held in the Pittsburgh Plate Glass case, supra, 360 U.S. at 400, Ard has not made a showing of particularized need, but cf. Dennis v. United States, 384 U.S. 855, 872-73

(1966) (Court found that defense did not fail to make out a particularized need, listing the circumstances of particularized need). The issues Ard points out–the second Grand Jury foreperson signing the Superseding Indictment, the instruction of the Grand Jury on the law–does not show particularized need (see Docket No. 293, Order at 12). Thus, Ard's motion to inquire into Grand Jury proceedings to look into these issues is **denied**.

D. Disclosure of Identification Procedures

The Government has not addressed whether identification procedures were used in this case (see Docket No. 330, Ard Reply at 4). Ard's discovery seeks to learn whether these procedures were used and not the Government's intentions to use them at trial. If identification procedures were used, they **should be disclosed to defendants**; their motion on this ground is **granted**.

E. Statements and Jencks Act and Exculpatory Materials

Ard next seeks production of all other documents material to preparing the defense, arguing that defendants need not show that the items are material before they are produced (Docket No. 316, Jt. Motion at 8-9). Since both defendants and this Court are in the dark as to what the Government has, Ard proposes that the Government identify additional documents that "relate in any way to the present case so that the discoverability of that information might be evaluated at the present time" (id. at 9-10).

Ard also seeks tentative, and then final, lists of documents the Government intends to use at trial, Bates numbered (Docket No. 316, Jt. Motion at 10). As discussed in the Criminal ESI Order (Docket No. 291, Order at 10), Briggs, supra, 2011 U.S. Dist. LEXIS 101415, at *16-17, and in this Order above (at 7, supra), Criminal Rule 16 does not specify the manner or methods

of discovery and disclosure. That rules does not require the Government to Bates number the documents it intends to use at trial. While a Bates numbering system may be convenient for a voluminous production as presented here, Rule 16 does not require it.

Ard reiterates defendants' demand that the Government produce statements by persons whom the Government does not intend to call as witnesses, to avoid the bar (Ard deems to be impermissible, cf. Docket No. 316, Jt. Motion at 10-11) the Government raises under the Jencks Act (Docket No. 316, Jt. Motion at 10-11). Ard distinguishes between a statement, subject to production under Rule 16, and a Government witness statement subject to the timing and other limitations of the Jencks Act (id. at 11). This point requires consideration of what is governed by the Jencks Act.

That act states, pertinent here, "in any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case," 18 U.S.C. § 3500(a). The Jencks Act arose from Congress attempting to circumscribe judicial discretion in ordering the Government to produce previously recorded statements of its witnesses, see United States v. Nobles, 422 U.S. 225, 231 & n.5 (1975) (discussing Jencks v. United States, 353 U.S. 657 (1957); Palermo v. United States, 360 U.S. 343 (1959)). Ard seeks production of statements from non-Government witnesses or prospective witnesses and, in order to determine what those statements are, Ard seeks the Government to disclose "for examination any documents it intends to withhold from disclosure under the aegis of § 3500"(id.), thus early disclosure of Jencks Act material to learn of non-Jencks Act material.

Ard also invokes Federal Rule of Criminal Procedure 26.2, reiterating that this Rule supersedes the Jencks Act, in part because the rule applies in pretrial circumstances not stated in the Jencks Act (id. at 11-12).

Rule 16 deals with discovery and inspection rights of the parties while the Jencks Act involves trial practice, Nobles, supra, 422 U.S. at 235, that is, after statements are introduced when the defendant can obtain the statement at trial to refute it. At least one other court has held that Rule 26.2 does not alter the delivery schedule of statements under the Jencks Act, United States v. Litman, 547 F. Supp. 645, 652 (W.D. Pa. 1982). Rule 26.2, like the Jencks Act for the Government, requires on motion that the proponent attorney for a witness produce to the other side any statements of the witness in that attorney's possession related to the witness's testimony, Fed. R. Cr. P. 26.2(a). Both the Jencks Act and Rule 26.2 deal with the trial procedures for disclosing a witness's statement following testifying, where Rule 26.2 goes beyond the trial to apply to a preliminary hearing, Fed. R. Cr. P. 26.2(g)(1), detention hearings, id. R. 26.2(g)(4), and other post-trial proceedings, id. R. 26.2(g)(2)-(3), (5). Thus, for pretrial proceedings, Rule 26.2 would make available statements by witnesses at a preliminary hearing or a detention hearing. There were no preliminary hearings leading to this case and only two defendants had detention hearings (text minute entry Aug. 19, 2010; see also Docket No. 27, Maye, hearing held on August 19, 2010, where the Government withdrew its motion for detention; text minute entries, Aug. 25, 2010, Sept. 15, 2010, and Dec. 8, 2010; Williams, hearings held Aug. 25, 2010 (adjourned), Sept. 15, 2010 (where defendant waived detention hearing), and December 8, 2010 (denying defense motion to be released)). Thus, the scope of discovery here is in effect the same under the Jencks Act and Rule 26.2, see also United States v. Bobadilla-Lopez, 954 F.2d 519,

532 n.15 (9th Cir. 1992) (Reinhart, J., dissenting) (Docket No. 293, Order at 9-10; cf. Docket No. 316, Jt. Motion at 11-12). Both the Jencks Act and the rule require production after the witness testifies.

Therefore, while defendants are entitled to statements from non-Government witnesses (that is, non-Jencks Act material) they are not entitled to have the Government in effect give them a "privilege-Jencks Act" list of witnesses and their statements that the Government claims will be governed by that Act. Ard's motion on this relief is **granted in part, denied in part**.

F. Redactions

Ard's chief complaint is the Government's unauthorized redactions in the documents produced and the search warrant (Docket No. 316, Jt. Motion at 12-13; see Docket No. 259, Jt. Initial Reply, at 18-19; Docket No. 226, Jt. Memo. at 23-25; see also Docket No. 223, Dolly Motion, Def. Atty. Decl. ¶¶ 53-54, 111). Initially, the Government stated the reason for the redactions in the search warrant applications was to avoid disclosing confidential informants, offering to produce the unredacted applications for in camera inspection (see Docket No. 197, Gov't Atty. Aff. ¶ 5). Responding to the motion to reconsider, the Government reaffirms that the redactions in the produced search warrant materials relates to cooperating individuals and confidential informants which the Government persists in objecting to disclose (Docket No. 325, Gov't Consol. Response at 23 & n.12).

This Court has not been produced the redacted version of the search warrant materials so it is not clear what was redacted and, aside from Ard's representations, the extent of the redaction. Therefore, the Government **is to produce for in camera inspection** the unredacted and redacted search warrant application; this in camera production shall occur within thirty (30)

days of entry of this Order, at the Chambers of the undersigned, at U.S. Courthouse, 2 Niagara Square, Buffalo, New York.

G. Other Discovery Relief

Finally, in reply Ard notes that the Government has not disclosed if forms of surveillance other than those captured in the VoiceBox system were used (Docket No. 330, Ard Reply at 7). The Government **is to disclose what other forms of surveillance were used that were not memorialized in VoiceBox** or indicate whether the entirety of the surveillance was captured in VoiceBox. On this ground, defendants' motion is **granted**.

**CONCLUSION**

For the reasons stated above, Ard and joining defendants' motion (Docket No. 308) to correct and amend this Court's criminal ESI Order of September 8, 2011 (Docket No. 291, United States v. Briggs, No. 10CR184, 2011 U.S. Dist. LEXIS 101415 (W.D.N.Y. Sept. 8, 2011)), regarding particular electronically stored information is **denied**. So much of their motion regarding unaddressed discovery issues (Docket No. 308, Ard Motion at 9) is **denied**.

Ard and others' motion (Docket No. 316) to reconsider this Court's Order of September 9, 2011 (Docket No. 293), is **granted in part, denied in part** as indicated above. Specifically, the Government is to state identification procedures used and statements of persons the Government does not intend to call as witnesses; and other relief defendants sought to be reconsidered is **denied**. The Government is to produce, for in camera inspection, both the

unredacted and redacted versions of the search warrant applications to the Chambers of the undersigned within thirty (30) days of entry of this Order.

So Ordered.

/s/ Hugh B. Scott
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 23, 2011